UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-cr-0025-AGF |
| | ) | |
| ALPHONSO EDUARDO GONZALES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Defendant Alphonso Gonzales filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 778. Gonzales's motion has since been supplemented by counsel.[1] ECF Nos. 786 & 800. The Government has filed a response in opposition. ECF No. 792.

The motions and supplements before this Court argue that extraordinary and compelling reasons support a reduced sentence pursuant to the United States Sentencing Guidelines ("USSG") §1B1.13(b)(5)'s "other reasons" category. Specifically, the reasons put forth by Gonzales are the disparity between sentencing under methamphetamine mixture versus methamphetamine actual; the sentence of 216 months being unusually long; disparities between Gonzales's sentence and the sentences of his co-defendants (all of whom have been released);

[1] The Court ordered the parties to supplement their briefs to address the effect, if any, of the Supreme Court's decision in *Rutherford v. United States,* 146 S. Ct. 1320 (2026) on Gonzales's claims. ECF No. 796. In his supplemental brief, Gonzales argues that *Rutherford* does not apply to his claims because he is not asserting that his sentence is unusually long due to a non-retroactive change in the law, which was the issue addressed in *Rutherford*. ECF No. 800. The Government did not respond to Gonzales's supplemental brief, and the time to do so has passed. Upon careful consideration, the Court agrees that *Rutherford* does not apply to Gonzales's claims.

and Gonzales's immigration status leading him to be ineligible to receive the benefits of the time credits he has earned under the First Step Act and certain rehabilitative programs.

The Government opposes compassionate release arguing that (1) Gonzales's sentence was not unusually long due to the facts and circumstances of the case; (2) co-defendants were not similarly situated to Gonzales in terms of conduct or criminal history; and (3) the inability to earn First Step Act credits is due to the statute under which Gonzales was sentenced under being excluded from the First Step Act. Alternatively, the Government argues that Gonzales does not qualify for a reduced sentence due to Gonzales remaining a danger to the community and the sentencing factors not supporting a reduced sentence.

The Court concludes that Gonzales' motion must be denied as the grounds raised by Gonzales, both alone and in conjunction, are not extraordinary or compelling.

## BACKGROUND

Pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), Gonzales pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and 21 U.S.C. §841(b)(1)(A)(viii), and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B) and 18 U.S.C. § 1956(h). ECF No. 615. These charges related to Gonzales's role in a drug trafficking conspiracy involving fourteen other co-defendants, in which Gonzales was ranked first in culpability, along with one other co-defendant, as he was the source of supply for the drug trafficking organization and orchestrated the money laundering.

The precise amount of the mixture or substance containing methamphetamine attributable to Gonzales was difficult to calculate but the parties in the plea agreement agreed that it was more than 1.5 kilograms but less than 5 kilograms of methamphetamine. Additionally, the

precise amount of mixture or substance containing cocaine attributable to Gonzales was difficult to calculate but the parties agreed that it was more than 5 kilograms but less than 15 kilograms of cocaine.

In exchange for his voluntary plea of guilty to the two counts noted above, the Government agreed to dismiss additional counts charging Gonzales with engaging in a continuing criminal enterprise, conspiracy to distribute cocaine, and conspiracy to distribute marijuana. Notably, the charge of engaging in a continuing criminal enterprise would have subjected Gonzales to a mandatory minimum term of imprisonment of 20 years, or 240 months.

Based on the quantity of drugs involved and Gonzales's status as an organizer or leader, the parties estimated the total offense level for both counts under the Sentencing Guidelines was 37, and his criminal history category was II, resulting in a Guidelines imprisonment range of 235 to 293 months' imprisonment. However, under the binding plea agreement, the parties agreed that Gonzales's sentence should be 216 months' imprisonment, notwithstanding the application or non-application of any particular Sentencing Guidelines. The Court accepted the parties' binding plea agreement and, on April 15, 2015, sentenced Gonzales to a below-Guidelines range term 216 months' imprisonment on each of the counts charged, to be served concurrently. ECF No. 615.

Gonzales's co-defendants were sentenced to terms shorter than 216 months. In his current motion, Gonzales argues that the shorter sentences of co-Defendants Baldomero Espinoza-Estrada and Maira Liset Garcia-Loya create unwarranted sentencing disparities here. Co-defendant Espinoza-Estrada was the only co-defendant to be co-ranked with Gonzales as first in culpability. ECF 570 at 10. However, Espinoza-Estrada did not receive a four-level enhancement for being the organizer or leader of the criminal activity, by either the PSR or the

Court, like Gonzales did. *Id.* at 12. Moreover, Espinosa-Estrada had a criminal history category of I, whereas Gonzales's criminal history category was II. *Id.* at 17. Espinosa-Estrada's Guidelines range was therefore calculated to be 87 to 108 months. *Id.* Espinosa-Estrada was sentenced within that range, at the low end, to 87 months' imprisonment. ECF No. 577.

Co-defendant Garcia-Loya, Gonzales's wife, had a Guidelines sentencing range of 168 to 210 months. ECF No. 562 at 19. Garcia-Loya was ranked second in culpability and received a three-level addition due to her role as manager or supervisor (but not an organizer or leader) in the criminal activity. *Id.* at 13. She had a criminal history category of II. *Id.* at 15. In the plea agreement, the parties estimated her Sentencing Guidelines range would be 135-168 months, and they agreed to jointly recommend a sentence of 135 months. ECF No. 442, at 2. The Court found the parties' recommendation to be reasonable and, pursuant to that recommendation as well as the characteristics of the particular defendant, the Court sentenced Garcia-Loya to 135 months' imprisonment.

**DISCUSSION**

A court can reduce a final sentence only under the very limited circumstances listed in 18 U.S.C. § 3582(c). Before the passage of the First Step Act, a defendant could not file a motion for compassionate release directly with the court. Instead, only the Bureau of Prisons (BOP) could request compassionate release. *See, e.g., United States v. Mills,* No. 1:10-CR-117 CAS, 2014 WL 3845441 (E.D. Mo. Aug. 5, 2014). The First Step Act changed that so that a defendant may now file a direct motion with the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." § 3582(c)(1)(A). The Government does not

dispute that Gonzales has exhausted his administrative remedies.

Section 3582(c)(1)(A) "permits a district court to reduce a prisoner's sentence if, after considering the factors in 18 U.S.C. § 3553(a), 'it finds that . . . extraordinary and compelling reasons warrant such a reduction' and 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 28 F.4th 929, 930 (8th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)). The defendant bears the burden of establishing that compassionate release is warranted. *United States v. Banderas,* 39 F.4th 1059, 1062 (8th Cir. 2022).

Effective November 1, 2023, the Sentencing Commission amended the Sentencing Guidelines to implement the above-noted statute and to explicitly address defendant-initiated motions for compassionate release. *See* U.S.S.G. §1B1.13 (effective Nov. 1, 2023). This amendment identifies several circumstances that alone or in combination may qualify as extraordinary and compelling reasons warranting a sentence reduction. These circumstances include the defendant's (1) serious medical condition, (2) age, (3) family circumstances, and (4) status as the victim of abuse. U.S.S.G. §1B1.13(b)(1)-(4).

The amendment also includes a catch-call provision, § 1B1.13(b)(5), which states that extraordinary and compelling reasons exist when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. §1B1.13(b)(5). Gonzales argues that compassionate release is warranted under this catch-all provision.[2]

[2] As noted above, Gonzales is not seeking relief under § 1B1.13(b)(6), governing "unusually long sentence[s]" in light of a change in the law, and he does not assert any relevant change in the law here.

**<u>Gonzales's Eligibility under §1B1.13(b)(5)</u>**

## I. Argument I: Methamphetamine Sentencing Disparity

Gonzales first argues that he was "was sentenced based on methamphetamine (actual), leading to a significantly higher sentence than if it had been based on methamphetamine mixture." ECF No. 778 at 3. He asserts that his Sentencing Guidelines range would have been less but for the disparity between the treatment of actual methamphetamine versus a mixture or substance containing methamphetamine. Gonzales asserts this argument pro se; it was not addressed in the supplemental memorandum submitted by appointed counsel or by the Government. But this argument fails because it is untrue.

In Count II, Gonzales and ten other co-defendants were charged with a conspiracy to distribute "a mixture or substance containing a detectable amount of methamphetamine." The indictment further specifies that "the amount of mixture or substance containing a detectable amount of methamphetamine involved in the conspiracy . . . is in excess of 500 grams, making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(viii)." ECF No. 2 at 3.

Gonzales's plea agreement likewise makes plain that with respect to Count II, he was pleading guilty to an agreement "to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine" and that the amount was "in excess of five hundred grams." ECF No. 429 at 2-3. With respect to the Sentencing Guidelines calculation, the parties agreed that Gonzales was accountable for at least 1.5 kilograms and less than 5 kilograms of a mixture or substance containing a detectable amount of methamphetamine, and recognized that when converted to marijuana pursuant to the drug equivalency table, the 3,950 grams of methamphetamine for which Gonzales was accountable was equivalent to 7,900

kilograms of marijuana. When added to the cocaine and for which he was also accountable, equivalent to 2,400 kilograms of marijuana, the agreement provided that Gonzales would be accountable for 10,300 kilograms of marijuana equivalent, resulting in a Base Offense Level of 34, under Section 2D1.1(c)(2) of the Sentencing Guidelines. *Id.* at 13.

These exact calculations were reflected in the final PSR, to which no objection was filed. ECF No. 585 at 12. The 2014 Guidelines Manual used confirms Gonzales's Guidelines were based on a mixture or substance containing methamphetamine, not actual methamphetamine. The conversion table under § 2D1.1 specified that a gram of a mixture or substance containing methamphetamine would be converted to 2 kilograms of marijuana, while a gram of actual methamphetamine would be converted to 20 kilograms of marijuana. November 1, 2014 Sentencing Guidelines Manual, § 2D1.1 conversion table, at 157. Consistent with the charge and Gonzales's plea, his 3,950 grams of methamphetamine were converted to 7,900 kilograms of marijuana. Had the guidelines been calculated based on this quantity of actual methamphetamine, it would have resulted in 79,000 kilograms of marijuana. Thus, it is clear that Gonzales was sentenced based on a conspiracy involving a mixture or substance containing methamphetamine, not actual methamphetamine. Any argument based on disparate treatment between actual methamphetamine and a mixture or substance simply has no application here.

Moreover, to the extent Gonzales's claim is based on his critique of methamphetamine sentencing disparities generally, "district courts in the Eighth Circuit and elsewhere presented with the purity-based disparity of methamphetamine sentencing guideline argument have concluded that this issue *does not* constitute an 'extraordinary and compelling reason' for relief within the meaning of the statute." *United States v. Kilgore*, No. 2:18-CR-20027-JTS-1, 2026 WL 2881265, at *4 (W.D. Ark. July 24, 2026) (collecting cases), *report and recommendation*

*adopted,* No. 2:18-CR-20027, 2026 WL 2881220 (W.D. Ark. Sept. 24, 2026).

**II. Argument II: Unusually Long Sentence**

As to the second argument brought by both Gonzales, pro se, and through his counsel, the Court is likewise not persuaded. The argument in substance is that Gonzales is serving an unusually long sentence. As an initial matter, it is not clear that an unusually long sentence would be an appropriate factor to be considered under § 1B1.13(b)(5), which expressly refers only to those circumstances that are "similar in gravity to those described in paragraphs (1) through (4)," but does not refer to paragraph (6), governing unusually long sentences. *See, e.g.*, *United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2024 WL 945328, at *9 (N.D. Iowa Mar. 5, 2024) ("To the extent defendant is arguing under subsection (b)(5) he is entitled to compassionate release because of his long sentence, by its plain language that subsection does not apply to the considerations under subsection (b)(6), and so the Court rejects that argument."); *United States v. Vest,* 754 F.Supp.3d 829, 835 (W.D. Mo. 2024) (holding that factors under § 1B1.13(b)(5) should be similar in kind to health, age, and family circumstances).

In any event, as noted above, Gonzales received a below-Guidelines sentence that was 19 months shorter than the low end of the Guidelines range. Additionally, Gonzales was the only defendant charged in Count I with engaging in a continuing criminal enterprise. Had he been convicted of this charge, he would have been subject to a minimum sentence of 20 years. Under these circumstances, even if the Court could consider unusually long sentences as a factor warranting relief under § 1B1.13(b)(5), Gonzales did not receive an unusually long sentence.

**III. Argument III: Co-Defendant Disparity**

The third argument, brought both by Gonzales, pro se, and through counsel, is that there is extreme disparity in sentencing between Gonzales and his co-defendants. As with unusually

long sentences, it is not clear that co-defendant sentencing disparities is an appropriate factor to be considered under § 1B1.13(b)(5). *See, e.g.*, *United States v. Hoskins,* 735 F. Supp. 3d 1078, 1084 (S.D. Iowa 2024) (holding that sentencing disparities between co-defendants is not an extraordinary and compelling reason under § 3582(1)(A)(i)); *Vest,* 754 F.Supp.3d at 835 (holding that factors under § 1B1.13(b)(5) should be similarly personal and individualized like health, age, and family circumstances). In any event, "[t]he statutory directive in § 3553(a)(6) to avoid sentencing disparities refers to national disparities, not to differences between co-conspirators." *United States v. Armstrong*, 39 F.4th 1053, 1059 (8th Cir. 2022). The national statistics quoted by Gonzales do not convince the Court of an unwarranted sentencing disparity here, especially as Gonzales's prior criminal conviction was for a substantial narcotics conspiracy, and he committed the instant offenses soon after his release from prison and following deportation.

Further, even assuming this Court could consider co-defendant sentencing disparities under § 1B1.13(b)(5), the Court would require that Gonzales demonstrate an extreme disparity between similarly situated defendants. *United States v. Fry,* 792 F.3d 884, 892-93 (8th Cir. 2015). As noted above, the co-defendants discussed by Gonzales here are not similarly situated. Neither co-defendant shared Gonzales's offense level, criminal history category, or personal history and characteristics. Garcia-Loya was only ranked second in culpability, not first like Gonzales, and was only a manager or supervisor in the criminal activity, not an organizer or leader like Gonzales. Espinoza-Estrada, while ranked equally first in culpability like Gonzales, was not considered an organizer or leader in the criminal enterprise. Moreover, Espinoza-Estrada only had a criminal history category of I. The differences in the enhancements, criminal history category, and culpability are sufficient to show that the co-defendants were not similarly

situated.

## IV. Argument IV: Immigration Status

Both Gonzales, pro se, and counsel argue that Gonzales's immigration status and resulting ineligibility for certain good time credits or rehabilitative programs should be considered as factors warranting early release. As an initial matter, Gonzales's immigration status was known to the Court and considered at the time of sentencing. ECF No. 617. In any event, any consequences of that immigration status are not extraordinary and compelling as they are, unfortunately, "consequences of any federal inmate facing removal after finishing a criminal sentence." *United States v. Myton*, No. 98-CR-500-7 (FB), 2026 WL 1480898, at *1 (E.D.N.Y. May 27, 2026). For this reason, numerous district courts have rejected the argument that the consequences of a prisoner's immigration status can constitute extraordinary and compelling reasons warranting early release. *See United States v. Mariscal Vallejo*, No. CR 5:23-82-KKC-MAS-SS-3, 2026 WL 1330942, at *2 (E.D. Ky. May 13, 2026) (collecting cases).

Further, as the Government has asserted and Gonzales has not disputed, Gonzales would have been ineligible for the good-time credits at issue regardless of his immigration status because he was sentenced under 21 U.S.C. § 841(b)(1)(A)(viii) and found to be the leader of the criminal organization. *See* 18 U.S.C. § 3632(d)(4)(D).

## V. Argument V: In Total

For the reasons discussed above, the Court concludes that none of the grounds on which Gonzales relies rises to the level of extraordinary and compelling reasons that would warrant sentence reduction. Neither do these grounds taken together rise to such level.

Finally, considering Gonzales's criminal history, including his commission of the instant offenses soon after his release from prison and deportation, as well as his leadership role in the

offenses, the Court is not convinced that he no longer poses a danger to the community. Rather, considering all of the sentencing factors listed under 18 U.S.C. § 3553(a), the Court concludes that the sentence previously imposed is necessary to meet the sentencing objectives of reflecting the seriousness of this defendant's crime and providing appropriate punishment, incapacitation, and deterrence.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Alphonso Gonzales's pro se and supplemental motions for compassionate release are **DENIED.** ECF Nos. 778, 786 & 800.

Audrey G. Fleissig

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 9th day of October, 2026